# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 14-837V
### Filed: November 13, 2020
### UNPUBLISHED

| | |
|---|---|
| L.C, a minor by and Through her Guardian Ad Litem,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>      Respondent. | Joint Stipulation on Damages; haemophilus influenzae type B (HIB); diphtheria-tetanus-acellular pertussis (DTaP); hepatitis B (Hep B); inactivated poliovirus (IPV); pneumococcal conjugate (PCV); rotavirus; quadriplegia; transverse myelitis |

*Danny Chia-Chi Soong*, Law Office of Danny Soong, West Covina, CA, for petitioner.
*Althea Walker Davis*, U.S. Department of Justice, Washington, DC, for respondent.

### DECISION ON JOINT STIPULATION[1]

  On September 9, 2014, petitioner filed a petition on behalf of her daughter, L.C., for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*,[2] (the "Vaccine Act"). Petitioner alleges that she suffered quadriplegia secondary to transverse myelitis as a result of her receipt of haemophilus influenzae type B ("HIB"), diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B ("Hep B"), inactivated poliovirus ("IPV"), pneumococcal conjugate ("PCV"), and rotavirus vaccines on September 10, 2012. Petition at 1; Stipulation, filed November 13, 2020, at ¶ 4. Petitioner further alleges that the vaccines were administered within the United States, that her daughter's condition has persisted for more than six months, and that there has been no prior award or settlement of a civil action for damages on behalf of L.C. as a result of her condition. Petition at 1-4; Stipulation at ¶¶ 3-5. "Respondent denies that the HIB, DTaP, Hep B, IPV, PCV, or rotavirus vaccines caused L.C. to suffer

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

from quadriplegia secondary to transverse myelitis, or any other injury or her current condition." Stipulation at ¶ 6.

Nevertheless, on November 12, 2020, the parties filed the attached joint stipulation, stating that a decision should be entered awarding compensation. I find the stipulation reasonable and adopt it as the decision of the Court in awarding damages, on the terms set forth therein.

Pursuant to the terms stated in the attached Stipulation, **I award the following compensation:**

a. **A lump sum of $1,712,099.07 in the form of a check payable to TNB Financial Services, as trustee of the grantor reversionary trust established for the benefit of L.C.** This amount represents compensation for first year life care expenses ($513,804.07) and trust seed funds ($1,198,295.00). Stipulation at ¶ 8;

b. **A lump sum of $750,000.00 in the form of a check payable to petitioner as guardian/conservator of the estate of L.C. for the benefit of L.C.** This amount represents compensation for lost future earnings and pain and suffering. Stipulation at ¶ 8;

c. **A lump sum of $2,612,770.08 in the form of a check payable jointly to petitioner and Oklahoma Health Care Authority and mailed to:**

   Oklahoma Health Care Authority
   Third Party Liability Unit
   4345 N. Lincoln Blvd.
   Oklahoma City, OK 73105
   Attn: Lisa Duncan
   OKCA Case #: 629341

Petitioner shall endorse this check to the Oklahoma Health Care Authority. Stipulation at ¶ 8;

d. **A lump sum of $94,996.00 in the form of a check payable jointly to petitioner and the South Carolina Department of Health and Human Services, and mailed to:**

   DHHS Reporting and Receivables
   P.O. Box 8355
   Columbia SC 29202-9189
   Attn: Melissa Andrade
   Case Number: C-20-001209

Petitioner shall endorse this check to the South Carolina Department of Health and Human Services. Stipulation at ¶ 8; and

2

> e. **An amount sufficient to purchase the annuity contract described in paragraph 10 of the stipulation.** Stipulation at ¶ 8.

These amounts represent compensation for all items of damages that would be available under § 15(a).

      In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment in accordance with this decision.[3]

**IT IS SO ORDERED.**

                                            **s/Daniel T. Horner**
                                            Daniel T. Horner
                                            Special Master

---

[3] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
OFFICE OF SPECIAL MASTERS

| | |
|---|---|
| L.C., a Minor, by and Through Her Guardian Ad Litem, Daniela Crumpton,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | No. 14-837V<br>Special Master Horner |

## STIPULATION

The parties hereby stipulate to the following matters:

1. Daniela Crumpton ("petitioner") filed a petition for vaccine compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 to 34 (the "Vaccine Program"), on behalf of her daughter, L.C. The petition seeks compensation for injuries allegedly related to L.C.'s receipt of the haemophilus influenzae type B ("HIB"), diphtheria-tetanus-acellular pertussis ("DTaP"), hepatitis B ("Hep B"), inactivated poliovirus ("IPV"), pneumococcal conjugate ("PCV"), and rotavirus vaccines, which vaccines are contained in the Vaccine Injury Table (the "Table"), 42 C.F.R. § 100.3 (a).

2. L.C. received the immunizations on September 10, 2012.

3. The vaccines were administered within the United States.

4. Petitioner alleges that L.C. suffered quadriplegia secondary to transverse myelitis as a result of receiving the vaccines on September 10, 2012, and suffered the residual effects of these alleged injuries for more than six months.

5. Petitioner represents that there has been no prior award or settlement of a civil action for damages on behalf of L.C. as a result of her condition.

6. Respondent denies that the HIB, DTaP, Hep B, IPV, PCV, or rotavirus vaccines caused L.C. to suffer from quadriplegia secondary to transverse myelitis, or any other injury or her current condition.

7. Maintaining their above-stated positions, the parties nevertheless now agree that the issues between them shall be settled and that a decision should be entered awarding the compensation described in paragraph 8 of this Stipulation.

8. As soon as practicable after an entry of judgment reflecting a decision consistent with the terms of this Stipulation, and after petitioner has filed an election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), the Secretary of Health and Human Services will issue the following vaccine compensation payments:

   a. A lump sum of $1,712,099.07, which amount represents compensation for first year life care expenses ($513,804.07) and trust seed funds ($1,198,295.00), in the form of a check payable to TNB Financial Services, as trustee of the grantor reversionary trust established for the benefit of L.C.;

   b. A lump sum of $750,000.00, which amount represents compensation for lost future earnings and pain and suffering, in the form of a check payable to petitioner as guardian/conservator of the estate of L.C. for the benefit of L.C. No payments shall be made until petitioner provides respondent with documentation establishing that she has been appointed as guardian/conservator of L.C.'s estate;

   c. A lump sum of $2,612,770.08, which amount represents reimbursement of a lien for services rendered on behalf of L.C., in the form of a check payable jointly to petitioner and Oklahoma Health Care Authority, and mailed to:

   Oklahoma Health Care Authority
   Third Party Liability Unit
   4345 N. Lincoln Blvd.
   Oklahoma City, OK 73105
   Attn: Lisa Duncan
   OKCA Case #: 629341

Petitioner agrees to endorse this check to the Oklahoma Health Care Authority.

 d. A lump sum of $94,996.00, which amount represents reimbursement of a lien for services rendered on behalf of L.C., in the form of a check payable jointly to petitioner and the South Carolina Department of Health and Human Services, and mailed to:

DHHS
Reporting and Receivables
P.O. Box 8355
Columbia, SC 29202-9189
Attn: Melissa Andrade
Case Number: C-20-001209

Petitioner agrees to endorse this check to the South Carolina Department of Health and Human Services.

 e. An amount sufficient to purchase the annuity contract described in paragraph 10 below, paid to the life insurance company from which the annuity will be purchased (the "Life Insurance Company").

 9. The Life Insurance Company must have a minimum of $250,000,000.00 capital and surplus, exclusive of any mandatory security valuation reserve. The Life Insurance Company must have one of the following ratings from two of the following rating organizations:

  a. A.M. Best Company: A++, A+, A+g, A+p, A+r, or A+s;

  b. Moody's Investor Service Claims Paying Rating: Aa3, Aa2, Aa1, or Aaa;

  c. Standard and Poor's Corporation Insurer Claims-Paying Ability Rating: AA-, AA, AA+, or AAA;

  d. Fitch Credit Rating Company, Insurance Company Claims Paying Ability Rating: AA-, AA, AA+, or AAA.

 10. The Secretary of Health and Human Services agrees to purchase an annuity contract from the Life Insurance Company for the benefit of L.C., pursuant to which the Life Insurance Company will agree to make payments periodically to the trustee, for the following items of compensation:

 a. For future unreimbursable Insurance Premium expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,790.08 to be paid up to the

anniversary of the date of judgment in year 2027. Then, on the anniversary of the date of judgment in year 2027, a lump sum of $4,126.92. Then, on the anniversary of the date of judgment in year 2028, a lump sum of $4,255.80. Then, on the anniversary of the date of judgment in year 2029, a lump sum of $4,384.56. Then, on the anniversary of the date of judgment in year 2030, a lump sum of $4,523.28. Then, on the anniversary of the date of judgment in year 2031, a lump sum of $4,662.00. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $4,805.76. Then, beginning on the anniversary of the date of judgment in year 2033, an annual amount of $4,954.32 to be paid up to the anniversary of the date of judgment in year 2037. Then, on the anniversary of the date of judgment in year 2037, a lump sum of $4,974.12. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $5,073.24. Then, on the anniversary of the date of judgment in year 2039, a lump sum of $5,192.16. Then, on the anniversary of the date of judgment in year 2040, a lump sum of $5,385.36. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $5,543.88, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

b. For future unreimbursable Insurance Maximum out of Pocket expenses, beginning on the first anniversary of the date of judgment, an annual amount of $3,000.00 to be paid up to the anniversary of the date of judgment in year 2042, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

c. For future unreimbursable Medicare Part B Premium and Deductible, Medigap G, Medicare Part D, Diastat, and Antibiotic expenses, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $10,842.94 to be paid up to the anniversary of the date of judgment in year 2077. Thereafter, beginning on the anniversary of the date of judgment in year 2077, an annual amount of $8,220.58 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of four percent (4%), compounded annually from the date of judgment.

d. For future unreimbursable Podiatrist expenses, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $248.50 to be paid for the remainder of L.C.'s life, increasing at the rate of four percent (4%), compounded annually from the date of judgment.

e. For future unreimbursable Physical Therapy, Occupational Therapy, Physical Therapy Evaluation, Occupational Therapy Evaluation, and Speech Therapy expenses, beginning on the first anniversary of the date of judgment, an annual amount of $42,127.82 to be paid up to the anniversary of the date of judgment in year 2024. Then, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $24,332.78 to be paid up to the anniversary of the date of judgment in year 2026. Then, beginning on the anniversary of the date of judgment in year 2026, an annual amount of $12,487.34 to be paid up to the anniversary of the date of judgment in year 2030, all amounts increasing at the rate of three (3%), compounded annually from the date of judgment.

f. For future unreimbursable Case Management expenses, beginning on the first anniversary of the date of judgment, an annual amount of $6,000.00 to be paid up to the

anniversary of the date of judgment in year 2023. Thereafter, beginning on the anniversary of the date of judgment in year 2023, an annual amount of $3,000.00 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

g. For future unreimbursable Skilled Nursing/Facility expenses, beginning on the first anniversary of the date of judgment, an annual amount of $387,504.00 to be paid up to the anniversary of the date of judgment in year 2042. Then, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $171,185.00 to be paid up to the anniversary of the date of judgment in year 2065. Thereafter, beginning on the anniversary of the date of judgment in year 2072, an annual amount of $171,185.00 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

h. For future unreimbursable Bowel Program, Multi Vitamin, Vitamin D3, Topical Antibiotic, Peridex Mouth Rinse, Melatonin, and Simethicone expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,735.93 to be paid for the remainder of L.C.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

i. For future unreimbursable Wipe, Gloves, Washable Pad, Disposable Pad, Waterproof Mattress Pad, Disinfectant Spray, Ambu Bag, and Distilled Water expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,003.37 to be paid up to the anniversary of the date of judgment in year 2042, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

j. For future unreimbursable Briefs/Diapers, Heel Protector, and Anti-embolic Stocking expenses, beginning on the first anniversary of the date of judgment, an annual amount of $1,508.30 to be paid for the remainder of L.C.'s life, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

k. For future unreimbursable Suction Catheter Kit, Yankauer Catheter, Saline Bullet, Suction Toothbrush, and Enteral Feed expenses, beginning on the first anniversary of the date of judgment, an annual amount of $4,780.65 to be paid up to the anniversary of the date of judgment in year 2024. Thereafter, beginning on the anniversary of the date of judgment in year 2024, an annual amount of $7,171.40 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

l. For future unreimbursable Electric Bed expenses, on the anniversary of the date of judgment in year 2030, a lump sum of $6,123.00, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

m. For future unreimbursable Manual Wheelchair, Cushion, Battery, Battery Charger, Wheelchair Maintenance, Shoulder Adduction Wedge, Universal Cuff, ECU, and ECU Software expenses, beginning on the first anniversary of the date of judgment, an annual

amount of $3,307.56 to be paid up to the anniversary of the date of judgment in year 2024. Then, on the anniversary of the date of judgment in year 2024, a lump sum of $3,614.33. Then, beginning on the anniversary of the date of judgment in year 2025, an annual amount of $3,384.25 to be paid up to the anniversary of the date of judgment in year 2042. Thereafter, beginning on the anniversary of the date of judgment in year 2042, an annual amount of $3,112.65 to be paid for the remainder of L.C.'s life, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

n. For future unreimbursable Portable Ramp and Personal Oxygen Station expenses, on the anniversary of the date of judgment in year 2030, a lump sum of $2,837.61. Then, on the anniversary of the date of judgment in year 2040, a lump sum of $2,837.61, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

o. For future unreimbursable Exercise Mat and Table expenses, on the anniversary of the date of judgment in year 2026, a lump sum of $725.00. Then, on the anniversary of the date of judgment in year 2032, a lump sum of $725.00. Then, on the anniversary of the date of judgment in year 2038, a lump sum of $725.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

p. For future unreimbursable Shower Chair expenses, on the anniversary of the date of judgment in year 2027, a lump sum of $1,009.00. Then, on the anniversary of the date of judgment in year 2034, a lump sum of $1,009.00. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $1,009.00, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

q. For future unreimbursable Lift Sling, Heated Humidifier, Vital Signs Equipment, and Pulse Oximeter expenses, beginning on the first anniversary of the date of judgment, an annual amount of $223.35 to be paid up to the anniversary of the date of judgment in year 2041. Then, on the anniversary of the date of judgment in year 2041, a lump sum of $177.83, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

r. For future unreimbursable Vehicle Modification expenses, on the anniversary of the date of judgment in year 2030, a lump sum of $45,694.17. Then, on the anniversary of the date of judgment in year 2040, a lump sum of $45,694.17, all amounts increasing at the rate of three percent (3%), compounded annually from the date of judgment.

s. For future unreimbursable Vehicle Modification Maintenance expenses, beginning on the first anniversary of the date of judgment, an annual amount of $862.50 to be paid up to the anniversary of the date of judgment in year 2042, increasing at the rate of three percent (3%), compounded annually from the date of judgment.

At the sole discretion of the Secretary of Health and Human Services, the periodic payments may be provided to the trustee in monthly, quarterly, annual, or other installments. The "annual amounts" set forth above describe only the total yearly sum to be paid to the trustee and do not require that the payment be made in one annual installment. The trustee will continue to receive the annuity payments from the Life Insurance Company only so long as L.C. is alive at the time that a particular payment is due. Written notice to the Secretary of Health and Human Services, the trustee, and the Life Insurance Company shall be provided within twenty (20) days of L.C.'s death.

11. The annuity contract will be owned solely and exclusively by the Secretary of Health and Human Services and will be purchased as soon as practicable following the entry of a judgment in conformity with this Stipulation. The parties stipulate and agree that the Secretary of Health and Human Services and the United States of America are not responsible for the payment of any sums other than the amounts set forth in paragraph 8 herein and the amounts awarded pursuant to paragraph 12 herein, and that they do not guarantee or insure any of the future annuity payments. Upon the purchase of the annuity contract, the Secretary of Health and Human Services and the United States of America are released from any and all obligations with respect to future annuity payments.

12. As soon as practicable after the entry of judgment on entitlement in this case, and after petitioner has filed both a proper and timely election to receive compensation pursuant to 42 U.S.C. § 300aa-21(a)(1), and an application, the parties will submit to further proceedings before the special master to award reasonable attorneys' fees and costs incurred in proceeding upon this petition.

13. Petitioner and her attorney represent that compensation to be provided pursuant to this Stipulation is not for any items or services for which the Program is not primarily liable under 42 U.S.C. § 300aa-15(g), to the extent that payment has been made or can reasonably be expected to be made under any State compensation programs, insurance policies, Federal or State health benefits programs (other than Title XIX of the Social Security Act (42 U.S.C. § 1396 et seq.)), or by entities that provide health services on a pre-paid basis.

14. Payments made pursuant to paragraph 8 and any amounts awarded pursuant to paragraph 12 of this Stipulation will be made in accordance with 42 U.S.C. § 300aa-15(i), subject to the availability of sufficient statutory funds.

15. The parties and their attorneys further agree and stipulate that, except for any award for attorneys' fees and litigation costs, and past unreimbursed expenses, the money provided pursuant to this Stipulation will be used solely for the benefit of L.C. as contemplated by a strict construction of 42 U.S.C. § 300aa-15(a) and (d), and subject to the conditions of 42 U.S.C. § 300aa-15(g) and (h).

16. Petitioner represents that she presently is, or within 90 days of the date of judgment will become, duly authorized to serve as guardian/conservator of L.C.'s estate under the laws of the State of South Carolina. No payments pursuant to this Stipulation shall be made until petitioner provides the Secretary with documentation establishing her appointment as guardian/conservator of L.C.'s estate. If petitioner is not authorized by a court of competent jurisdiction to serve as guardian/conservator of the estate of L.C. at the time a payment pursuant to this Stipulation is to be made, any such payment shall be paid to the party or parties appointed by a court of competent jurisdiction to serve as guardian(s)/conservator(s) of the estate of L.C. upon submission of written documentation of such appointment to the Secretary.

17. In return for the payments described in paragraphs 8 and 12, petitioner, in her individual capacity and as legal representative of L.C., on behalf of herself, L.C., and L.C.'s heirs, executors, administrators, successors or assigns, does forever irrevocably and unconditionally release, acquit and discharge the United States and the Secretary of Health and Human Services from any and all actions or causes of action (including agreements, judgments, claims, damages, loss of services, expenses and all demands of whatever kind or nature) that have been brought, could have been brought, or could be timely brought in the Court of Federal Claims, under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10 et seq., on account of, or in any way growing out of, any and all known or unknown, suspected or unsuspected personal injuries to or death of L.C. resulting from, or alleged to have resulted from the HIB, DTaP, Hep B, IPV, PCV, or rotavirus vaccinations administered on September 10, 2012, as alleged by petitioner in a petition for vaccine compensation filed on or about September 9, 2014, in the United States Court of Federal Claims as petition No. 14-837V.

18. If L.C. should die prior to entry of judgment, this agreement shall be voidable upon proper notice to the Court on behalf of either or both of the parties.

19. If the special master fails to issue a decision in complete conformity with the terms of this Stipulation or if the Court of Federal Claims fails to enter judgment in conformity with a decision that is in complete conformity with the terms of this Stipulation, then the parties' settlement and this Stipulation shall be voidable at the sole discretion of either party.

20. This Stipulation expresses a full and complete negotiated settlement of liability and damages claimed under the National Childhood Vaccine Injury Act of 1986, as amended, except as otherwise noted in paragraph 12 above. There is absolutely no agreement on the part of the parties hereto to make any payment or to do any act or thing other than is herein expressly stated

and clearly agreed to. The parties further agree and understand that the award described in this Stipulation may reflect a compromise of the parties' respective positions as to liability and/or amount of damages, and further, that a change in the nature of the injury or condition or in the items of compensation sought, is not grounds to modify or revise this agreement.

21. Petitioner hereby authorizes respondent to disclose documents filed by petitioner in this case consistent with the Privacy Act and the routine uses described in the National Vaccine Injury Compensation Program System of Records, No. 09-15-0056.

22. This Stipulation shall not be construed as an admission by the United States or the Secretary of Health and Human Services that the HIB, DTaP, Hep B, IPV, PCV, or rotavirus vaccines caused L.C. to suffer from quadriplegia secondary to transverse myelitis or any other injury or condition.

23. All rights and obligations of petitioner hereunder shall apply equally to petitioner's heirs, executors, administrators, successors, and/or assigns as legal representatives of L.C.

END OF STIPULATION

/

/

/

/

/

Respectfully submitted,

**PETITIONER:**

*/s/ Daniela Crumpton*
DANIELA CRUMPTON

**ATTORNEY OF RECORD FOR PETITIONER:**

*/s/ Danny Soong*
DANNY SOONG, ESQ.
Law Offices of Danny Soong
Wells Fargo Building
100 N. Barranca St., Suite 700
West Covina, CA 91791
Tel: (626) 858-2068

**AUTHORIZED REPRESENTATIVE OF THE SECRETARY OF HEALTH AND HUMAN SERVICES:**

*CAPT Dale Mishler, DHSc, for*
TAMARA OVERBY
Acting Director, Division of Injury
Compensation Programs
Healthcare Systems Bureau
U.S. Department of Health
and Human Services
5600 Fishers Lane
Parklawn Building, Mail Stop 11C-26
Rockville, MD 20857

Dated: 11/12/20

**AUTHORIZED REPRSENTATIVE OF THE ATTORNEY GENERAL:**

*/s/ Catharine Reeves*
CATHARINE E. REEVES
Deputy Director
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146

**ATTORNEY OF RECORD FOR RESPONDENT:**

*Althea Walker Davis by Catharine Reeves*
ALTHEA WALKER DAVIS
Senior Trial Counsel
Torts Branch
Civil Division
U.S. Department of Justice
P.O. Box 146
Benjamin Franklin Station
Washington, DC 20044-0146
Tel: (202) 616-0515