# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 14-837V
Filed: April 22, 2022
PUBLISHED

| | |
|---|---|
| L.C., a minor by and through her guardian ad litem, DANIELA CRUMPTON,<br><br>    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>    Respondent. | Special Master Horner<br><br>Interim Attorneys' Fees and Costs; Excessive Travel Costs; Reasonable Rates; Vague Billing; Excessive Billing |

*Danny Chia-Chi Soong, Law Office of Danny Soong, West Covina, CA, for petitioner.*
*Althea Walker Davis, U.S. Department of Justice, Washington, DC, for respondent.*

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

  On November 11, 2020, petitioner moved for an award of attorneys' fees and costs in this compensated case totaling $501,230.11, including $465,999.95 in attorneys' fees and $35,230.16 in attorneys' costs. (ECF No. 77.) In response, respondent confirmed he is satisfied the statutory requirements for such an award have been met in this case, but deferred the special master regarding the amount. (ECF No. 78.) On April 22, 2021, petitioner filed a supplemental motion seeking additional reimbursement of $10,872.50 for attorneys' fees and costs related to establishment of guardianship and a special needs trust, bringing the total request to $512,102.61. (ECF No. 86.) Respondent objects to this supplemental request to the extent of any requested reimbursement for establishment of the special needs trust. (ECF No. 87.) Petitioner confirmed that she did not personally incur any expenses in connection with

---

[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

1

her prosecution of this case. (ECF No. 85.)  For the reasons discussed below, I award petitioner attorneys' fees and costs in the reduced amount of $333,218.74.

## I.     Legal Standard for Determining Reasonable Fees and Costs

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B).  The determination of the amount of reasonable attorneys' fees is within the special master's discretion.  *See, e.g. Saxton v. Sec'y of Health & Human Servs.,* 3 F.3d 1517, 1520 (Fed. Cir. 1993).  Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991).  Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam).  Special Masters use the lodestar approach to determine what constitutes reasonable attorneys' fees under the Vaccine Act.  *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347 (Fed. Cir. 2008).  The lodestar approach involves first determining "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'"  *Avera*, 515 F.3d at 1347–48 *(quoting Blum v. Stenson*, 465 U.S. 886, 888 (1984)).  Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings.  *Id*.

Petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award.  *Wasson,* 24 Cl. Ct. at 484.  Notwithstanding that respondent has not raised any specific objections to petitioner's fee application, "the Special Master has an independent responsibility to satisfy himself that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique."  *Duncan v. Sec'y of Health & Human Servs.*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008); *see also McIntosh v. Sec'y of Health & Human Servs.*, 139 Fed Cl. 238, 250 (2018) (finding that the special master "abused his discretion by failing to independently review the petitioner's counsel's motion for attorneys' fees and reimbursement of case costs to determine if the requested fees and costs were reasonable.").  Furthermore, "the Special Master [has] no additional obligation to warn petitioners that he might go beyond the particularized list of respondent's challenges."  *Duncan,* 2008 WL 4743493.

## II.     Analysis

### a.  Petitioner's Counsel's Hourly Rate

A reasonable hourly rate is "the prevailing market rate defined as the rate prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Avera*, 515 F.3d at 1348 (citation and quotation omitted).  In *Avera*, the Federal Circuit found that in Vaccine Act cases, the special master should use the rate prevailing in the forum, *i.e.*, Washington, D.C., in determining an award of attorneys' fees unless the bulk of the work is completed

outside of the forum and there is a "very significant difference" between the forum hourly rate and the local hourly rate. 515 F.3d at 1349 (citing *Davis County Solid Waste Mgmt. & Energy Recovery Spec. Serv. Dist. v. U.S. Envtl. Prot. Agency,* 169 F.3d 755 (D.C. Cir. 1999)).

For attorneys receiving forum rates, the decision in *McCulloch v. Secretary of Health & Human Services* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney.[2] No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has since updated the *McCulloch* rates, and the Attorneys' Forum Hourly Rate Fee Schedules for 2015-2016, 2017, 2018, and 2019 can be accessed online.[3] Petitioner asserts that Mr. Soong (who is located near Lost Angeles, California) should receive forum rates in accordance with *McCulloch* and the Attorneys' Forum Hourly Rate Fee Schedules. (ECF No. 77, p. 3.) Respondent did not raise any objection. (ECF No. 78.)

In this case, petitioner requests the following hourly rates for Mr. Soong: $375 per hour for work performed from 2014 through 2016; $424 per hour for work performed in 2017; $439 per hour for work performed in 2018; $448 per hour for work performed in 2019; and $467 per hour for work performed in 2020. (ECF No. 77, p. 3.) Petitioner seeks paralegal rates of $135 per hour for 2014 through 2016, $140 per hour for 2017, $145 per hour for 2018, $150 per hour for 2019, and $155 per hour for 2020. (*Id.*) The requested paralegal rates are in line with what is typically awarded under the Attorneys' Forum Hourly Rate Fee Schedules; however, Mr. Soong's requested rates are excessive.

Mr. Soong represents that he has been practicing law since 1997. (ECF No. 77, p. 3.) Accordingly, when this case commenced in 2014 he had approximately 17 years of experience, placing him within the "11-19 years of experience in practice" tier of the Attorneys' Forum Hourly Rate Fee Schedules. Beginning with his work performed in 2017, he could be categorized as falling within the "20-30 years of experience in practice" tier, though as a practical matter the low end of that tier overlaps with the high end of the preceding tier. The $375 per hour Mr. Soong seeks for work performed in 2014-2016 corresponds to the uppermost limit of the relevant tier (11-19 years) under the 2015-2016 Attorneys' Forum Hourly Rate Fee Schedule. The $424 he seeks for

---

[2] After discussing the potential approaches to setting a forum rate and reviewing cases and material from both within and without the Vaccine Program, the special master concluded that the following factors should be considered: (1) the prevailing rate for comparable legal work in Washington, DC; (2) the prevailing rate for cases in the Vaccine Program; (3) the experience of the attorney(s) in question within the Vaccine Program; (4) the overall legal experience of the attorney(s); (5) the quality of work performed by the attorney(s) in vaccine cases; and (6) the reputation of the attorney(s) in the legal community and community at large. *McCulloch,* 2015 WL 5634323, at *17.

[3] Each of the Fee Schedules for 2015 through 2019 can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules for 2017, 2018, and 2019 are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

2017 work corresponds to the uppermost limit of the relevant tier (20-30 years) under the 2017 Attorneys' Forum Hourly Rate Fee Schedule. For each year thereafter, his requested rate matches the inflation-adjusted uppermost limit of that tier for each year's Attorneys' Forum Hourly Rate Fee Schedule.

Three *McCulloch* factors weigh heavily in setting Mr. Soong's rate – overall legal experience, legal experience specific to this Program, and performance. (*See* n. 2, *supra*.) First, it is not reasonable for Mr. Soong to seek the top rate for attorneys having 20-30 years of experience when he only just gained the minimum number of years for that tier during the pendency of the case. Even in the abstract, his appropriate rate would lie toward the bottom of that range, and even then, only after 2017. Based on his experience at the beginning of the case and his performance throughout the pendency of the case,[4] his rates are better determined based on the "11-19" years of experience metric. Second, Mr. Soong represents that this is only his second vaccine injury case.[5] (ECF No. 77, p. 3.) In that regard, his billing records demonstrate that he did not prosecute this case with the type of efficiency expected from an attorney seasoned in

---

[4] Mr. Soong touts the size of the settlement in this case, presumably as an implied metric of his performance. (ECF No. 77, p. 2.) However, it is important to note that it took an unusually long period of time to resolve the case, including referral to an extended year and a half long ADR process, with substantial involvement by the ADR Special Master, to ultimately resolve the case. The ADR Special Master took great pains explaining to petitioner what information was needed to substantiate the available damages in this case. (ECF Nos. 69-70.) This after petitioner's counsel had already spent a year and a half seeking to negotiate a settlement even before the case entered ADR. Because this case resolved within the ADR process, the undersigned is not privy to whether or how petitioner's counsel's own legal acumen contributed to the ultimate outcome; however, the record of this case is clear that counsel's performance in the case was inefficient and inexperienced, causing delayed resolution.

[5] It should be noted that petitioner's counsel's prosecution of his first Vaccine Act case would charitably be described as unsuccessful. After commencing settlement discussions, petitioner's counsel moved for voluntary dismissal on the assumption that petitioner could achieve a larger award in civil court by suing the vaccine manufacturer. Petitioner's counsel then commenced suit in Los Angeles Superior Court alleging manufacturing and design defects as well as failure to warn, apparently unaware that these claims were preempted by the Vaccine Act. Petitioner moved for relief from the judgment dismissing her case in this forum on the basis that her counsel's ignorance of the law was excusable neglect. Petitioner's motion was denied. *G.G.M. by and Through Mora v. Sec'y of Health & Human Servs.*, No. 13-421V, 2015 WL 1275389 (Fed. Cl. Spec. Mstr. Feb. 27, 2015). A motion for review and subsequent appeal to the Federal Circuit did not succeed in reopening judgment. 122 Fed Cl. 199, *aff'd* 673 Fed.Appx. 991. Although the petitioner was eventually able to succeed in reopening judgment and achieved an award of damages via settlement, she was by that time represented by a different attorney who was ultimately responsible for achieving the settlement. 2018 WL 6822408 (Fed. Cl. Spec. Mstr. Nov. 27, 2018). Counsel conspicuously did not offer the name of his first Vaccine Act case in his motion or discuss the course or outcome of the case, merely noting the injury and vaccine at issue, potentially raising a question of candor. But in any event, based on this history and the fact that a different attorney ultimately achieved the settlement in that case, it does not appear that Mr. Soong's prior case contributed significantly to his understanding of the damages and settlement issues that informed much of the work done in this specific case. (Also of note: an unpublished decision was issued in that case awarding Mr. Soong interim fees and costs; however, the award was based on the total amount requested, which was unopposed, and Mr. Soong's hourly rates were not discussed.)

this program.⁶  Under the *McCulloch* framework, top rates for each tier are reserved for such attorneys.

Balancing all of the relevant considerations as well as the record as a whole, **I find that the following hourly rates are appropriate for Mr. Soong's work in this case:  $320 per hour for 2014 through 2016, $330 for 2017, $340 for 2018, $350 for 2019, and $360 for 2020.**

### b. Petitioner's Counsel's Hours Expended

Special masters may rely on their experience with the Vaccine Program to determine the reasonable number of hours expended. *Wasson v. Sec'y of Health & Human Servs*., 24 Cl. Ct. 482, 484 (1991), *rev'd on other grounds and aff'd in relevant part*, 988 F.2d 131 (Fed. Cir. 1993).  Special masters have previously reduced the fees paid to petitioners due to excessive and duplicative billing.  *See Ericzon v. Sec'y of Health & Human Servs*., No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing); *Raymo v. Sec'y of Health & Human Servs*., No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).  Petitioner's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Hensley v. Eckhart*, 461 U.S. 424, 434 (1983).  Upon review of the billing records in this case, several reductions are necessary.

First, petitioner's counsel billed for hours spent conducting background research into this program, its procedures, and people.⁷  This court has previously held that "it is inappropriate for counsel to bill time for educating themselves about basic aspects of the Vaccine Program."  *Matthews v. Sec'y of Health & Human Servs*., No. 14-1111V, 2016 WL 2853910, at *2 (Fed. Cl. Spec. Mstr. Apr. 18, 2016).  **This results in the**

---

⁶ For example, Mr. Soong's billing records reflect that he billed for research into seminal caselaw that experienced vaccine practitioners would know (*e.g. Althen, Knudsen, Capizzano*). (ECF No. 77-1, pp. 11-12.)  He also billed for research regarding medical concepts considered foundational to this practice area as well as for time consulting with attorneys more experienced in the Program. (*Id.* at 12-13.)  I will allow this billing because it was substantive and advanced petitioner's claim; however, it does speak to the appropriate hourly rate.  Mr. Soong simply does not (or did not at the time) operate with the type of knowledge that warrants a higher hourly rate.  In fact, additional billing (disallowed as discussed below) further shows a deficit of understanding that is not even consistent with this being Mr. Soong's second Vaccine Act case.  For example, despite having filed a prior case, Mr. Soong billed for "research who can file a petition" and "how to file a petition."  (Ex. 77-1, p. 1.)

⁷ This is distinguishable from the basic, but nonetheless substantive, research referenced in n. 6, *supra*.  Here, I refer to the following:  2/25/2014 (7 entries totaling researching "Who can file a petition," "How to file a petition," etc.); 7/10/14 and 7/17/14 (reading Guidelines for Practice); 9/5/14 (researching sample petition); 9/11/14 (conducting background research on Special Master Millman); 10/2/2014 (researching procedures regarding initial orders and respondent's Rule 4 report); 1/16/2015 (time spent reviewing a GAO report regarding the Vaccine Program); 5/8/2015 (researching opposing counsel); 8/24/2016 (learning about Rule 4 reports); 8/13/2018 (reading news articles about vaccines); 1/29/2019 (researching Special Master Roth).

**following reductions:  10.49 hours in 2014; 6 hours in 2015; 1.5 hours in 2016; 1 hour in 2018; and 1 hour in 2019**.

Second, Mr. Soong travelled three times during the course of this case and overbilled for travel time each time.  Mr. Soong travelled to a mediation session that was held in this case with Special Master Roth on June 11, 2019, in Greenville, South Carolina.  (*See* Minute Entry for proceeding, 6/17/2019.)  For reasons that are not explained, he flew cross country on June 7, three days prior to the scheduled mediation. (ECF No. 77-1, p. 21.)  He billed 12.5 hour of travel time on June 7, then billed three 24-hour blocks of time representing the full three days he was in the Carolinas prior to the mediation.  The billing records state "layover for mediation" with no explanation of any work being performed during that period.  He billed 13.8 hours on June 11 which he attributed to "travel to and from S.C. for mediation." (*Id*.)  He did not create any billing entry for the mediation itself.  In March of 2018, Mr. Soong billed a total of 34.25 hours over the course of March 14 and 15 for "Travel to and from L.A. to Oklahoma (billed for the day)" (13.5 hours) and "Overnight stay in OK, Bethany meeting, transfer flight ba" (20.75 hours).  (ECF No. 77-1, p. 16.)  Similarly, Mr. Soong travelled to Oklahoma to meet with petitioner early in his handling of this case in February of 2014. (ECF No. 77-1, p. 1.)  On February 23, 2014, he billed 18.75 hours to "fly to OK and stay overnight for a meeting." (*Id*.)  The next day, his meeting lasted for 8.5 hours, and then on the same day he billed 7.5 hours for his return travel. (*Id*.)

It is not reasonable for Mr. Soong to seek compensation for time he was not spending working on this case merely because he was away from home due to the case.  "One test of the 'reasonableness' of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation would be willing to pay for such expenditure."  *Hardy v. Sec'y of Health & Human Servs.*, No. 08-108V, 2016 WL 4729530 (Fed. Cl. Spec. Mstr. Aug. 16, 2016) (citing *Riggins v. Sec'y of Health & Human Servs.*, No. 99-382V, 2009 WL 3319819, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009); *Sabella v. Sec'y of Health & Human Servs.*, No. 02-1627, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008)).  For example, no reasonable hypothetical petitioner would agree to pay for Mr. Soong's time spent sleeping (which is clearly the result of his billing the full 24 hours for three days straight or where he explicitly billed time in 2018 for his overnight stay).  Moreover, it is not even clear why Mr. Soong spent 72 hours in the Carolinas ahead of the single day mediation.  No explanation is discernable from the billing records as Mr. Soong did not bill for any specific work activity during that period.  Accordingly, **Mr. Soong's hours are reduced by 72 hours for 2019, 12 hours in 2018,**[8] **and 11.25 for 2014**.[9]

Additionally, travel time in this program is usually billed at 50% of an attorneys' typical rate.  *E.g. O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, 2015 WL

---

[8] The billing records are inadequate to determine precisely how much of Mr. Soong's time was legitimately spent in meeting and in travel.  I will estimate the overnight period at 12 hours.

[9] Because Mr. Soong separately documented 7.5 hours of travel time on February 24, I will assume his legitimate travel time on February 23 was also 7.5 hours.

6

2399211, at *7 (Fed. Cl. Spec. Mstr. April 28, 2015) (explaining that there is no bright line rule, but that the Vaccine Program commonly awards attorneys half their established billing rate for time travelling).  Here, Mr. Soong's billing records reflect time billed for travel at a full rate, 25.8 hours in 2019, 22.25 hours in 2018,[10] and 15 hours in 2014.  Although this is technically a rate reduction, for ease of calculation I will reduce the hours by 50%, an equivalent reduction.  **This results in a reduction of 12.9 hours for 2019, 11.13 hours for 2018, and 7.5 hours for 2014.**

Finally, Mr. Soong's overall billing appears to be excessive. (*See* n. 4, *supra*.)  Additionally, he has not used a standard or consistent interval for his billing.  Typically, attorneys in this program are expected to bill in tenth of an hour increments.  *E.g. Franceschini v. Sec'y of Health & Human Servs*., No 16-1112V, 2019 WL 7372724, at *4 (Fed. Cl. Spec. Mstr. Dec. 10, 2019) (observing that counsel's minimum billing increment was 12 minutes instead of the typical 6 minutes and that this resulted in a pattern of excessive billing for simple tasks); *see also* Guidelines for Practice Under the National Vaccine Injury Compensation Program, Chapter 3 (Applications for Fees and Costs), Section B(1)(b) (Time Records)("Preferred time increments are tenths of an hour).[11]  However, in most instances Mr. Soong appears to use quarter hour units while in still others he uses third of an hour units.  For brief tasks (such as reading single page orders), the minimum interval he bills is .17 hours where most attorneys would have billed .10.  This billing method inflates the time entries for each task and makes it more difficult to determine whether the amount of time billed was appropriate and reasonable or whether the time billed accurately reflects the time spent.  Assessment is further hindered by the fact that each billing entry is relatively short and often vague.  *E.g. Barry v. Sec'y of Health & Human Servs*., No. 12-039V, 2016 WL 6835542 (Fed. Cl. Spec. Mstr. Oct. 25, 2016) (reducing for vague and block billing).[12]

For vague and excessive billing, **I reduce Mr. Soong's remaining billing by a further 10%.**  Special masters have previously reduced the fees paid to petitioners due to excessive billing based on percentage reductions.  *E.g. Ericzon v. Sec'y of Health & Human Servs*., No. 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan. 15, 2016) (reduced overall fee award by 10 percent due to excessive and duplicative billing);

---

[10] After reducing the March 2018 billing for the overnight stay, it still remains unclear what portion of Mr. Soong's 22.25 hours of billing is attributable to travel and what portion is attributable to his meeting.  Because petitioner bears the burden of proof, I will reduce the entire billing by half without differentiating the unknown number of hours that would have been spent in meeting.

[11] Of note, Mr. Soong billed 3.25 hours for reading through the Guidelines for Practice in July of 2014.  (ECF No. 77-1, p. 3.)  Only the current version of the Guidelines, last updated in April of 202, is currently available on the court's website:  http://www.uscfc.uscourts.gov/vaccine-guidelines

[12] I do note in the interest of completeness that the issue of vague billing is often coupled with block billing, resulting in large periods for which the character of the work performed cannot be discerned.  Mr. Soong appears to have avoided block billing; however, many of his entries do remain vague.  For example, between October 31, 2014, and December 4, 2014, Mr. Soong billed 4.75 hours for 6 different phone conversations with petitioner all of which were identified only as somehow relating to her daughter, L.C. (ECF No. 77-1, p. 4.)  Given that L.C. was the subject of this petition, these descriptions amount to nothing more than identifying the fact of a phone call between petitioner and counsel.

*Raymo v. Sec'y of Health & Human Servs.*, No. 11-654V, 2016 WL 7212323 (Fed. Cl. Spec. Mstr. Nov. 2, 2016) (reduced overall fee award by 20 percent), *mot. for rev. denied*, 129 Fed. Cl. 691 (2016).

### c. Petitioner's Counsel's Attorneys' Fee Calculation

2014

| Request (Rate x Hours) | Awarded Rate | Hour Reduction | Modified Amount (Rate x Hours) | Less 10% (amount x 0.90) | Paralegal (Rate x Hours) |
|---|---|---|---|---|---|
| $64,230.00 ($375 x 171.28) | $320 | 29.24 | $45,452.8 ($320 x 142.04) | $40,907.52 | $1,540.35 ($135 x 11.41) |
| **Total:** | **$42,447.87** | | | | |

2015

| Request (Rate x Hours) | Awarded Rate | Hour Reduction | Modified Amount (Rate x Hours) | Less 10% (amount x 0.90) | Paralegal (Rate x Hours) |
|---|---|---|---|---|---|
| $38,550.00 ($375 x 102.8) | $320 | 6 | $30,976.00 ($320 x 96.8) | $27,878.40 | $0.00 ($135 x 0) |
| **Total:** | **$27,878.40** | | | | |

2016

| Request (Rate x Hours) | Awarded Rate | Hour Reduction | Modified Amount (Rate x Hours) | Less 10% (amount x 0.90) | Paralegal (Rate x Hours) |
|---|---|---|---|---|---|
| $30,033.75 ($375 x 80.09) | $320 | 1.5 | $25,148.80 ($320 x 78.59) | $22,633.92 | $168.75 ($135 x 1.25) |
| **Total:** | **$22,802.67** | | | | |

2017

| Request (Rate x Hours) | Awarded Rate | Hour Reduction | Modified Amount (Rate x Hours) | Less 10% (amount x 0.90) | Paralegal (Rate x Hours) |
|---|---|---|---|---|---|
| $52,597.20 ($424 x 124.05) | $330 | 0 | $40,936.50 ($330 x 124.05) | $36,842.85 | $1,715.00 ($140 x 12.25) |
| **Total:** | **$38,557.85** | | | | |

2018

| Request (Rate x Hours) | Awarded Rate | Hour Reduction | Modified Amount (Rate x Hours) | Less 10% (amount x 0.90) | Paralegal (Rate x Hours) |
|---|---|---|---|---|---|

| $87,233.69 ($439 x 198.71) | $340 | 24.13 | $59,357.20 ($340 x 174.58) | $53,421.48 | $797.50 ($145 x 5.5) |
|---|---|---|---|---|---|
| **Total:** | **$54,218.98** | | | | |

2019

| Request (Rate x Hours) | Awarded Rate | Hour Reduction | Modified Amount (Rate x Hours) | Less 10% (amount x 0.90) | Paralegal (Rate x Hours) |
|---|---|---|---|---|---|
| $104,321.28 ($448 x 232.86) | $350 | 85.9 | $51,436.00 ($350 x 146.96) | $46,292.40 | $1,687.50 ($150 x 11.25) |
| **Total:** | **$47,979.90** | | | | |

2020

| Request (Rate x Hours) | Awarded Rate | Hour Reduction | Modified Amount (Rate x Hours) | Less 10% (amount x 0.90) | Paralegal (Rate x Hours) |
|---|---|---|---|---|---|
| $81,556.88 ($467 x 174.64) | $360 | 0 | $62,870.40 ($360 x 174.64) | $56,583.36 | $1,644.55 ($155 x 10.61) |
| **Total:** | **$58,227.91** | | | | |

Total Attorneys' Fees Awarded:

| | |
|---|---|
| 2014: | $42,447.87 |
| 2015: | $27,878.40 |
| 2016: | $22,802.67 |
| 2017: | $38,557.85 |
| 2018: | $54,218.98 |
| 2019: | $47,979.90 |
| 2020: | <u>$58,227.91</u> |
| **Total:** | **$292,113.58** (a total reduction of $173,886.37 from the requested amount of $465,999.95) |

### d. Petitioner's Counsel's Attorneys' costs

Attorneys' costs are subject to the same reasonableness requirements as attorneys' fees.  *See Perriera v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375.  Petitioner bears the burden of documenting her costs and demonstrating that they are reasonable. *E.g. Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533, 2011 WL 3705153, at *5 (Fed. Cl. Spec. Mstr. July 25, 2011) (explaining that petitioner bears the burden of presenting documentation of costs "at the time he submits his fee application" and that "the documentation must be sufficiently detailed to enable the reviewing judge to determine its reasonableness."), *mot. rev. denied* 201 WL 6292218.

Here, several of petitioner's costs are not documented. In fact, petitioner's counsel specifically indicated that some of these costs were "estimated."[13] Accordingly, the following costs, which are not documented, are disallowed:

- $400 for hotel dated 2/25/2014
- $100 for rental car dated 2/25/2014
- $200 for hotel dated 3/15/2018
- $875 for hotel dated 6/11/2019
- $200 for car rental dated 9/19/2019

This results in a reduction of $1,775.00 from the $35,230.16 in attorneys' costs requested in petitioner's initial motion. Upon my review, the remainder of the costs are sufficiently documented and were reasonably incurred. Thus, **petitioner is awarded reduced costs in the amount of $33,455.16.**

### e. Attorneys' Fees and Costs Associated with Special Needs Trust

In addition to all of the above, petitioner has requested $10,872.50 for attorneys' fees and costs payable to attorney Aaron DeBruin, Esq., and related to establishment of guardianship and a special needs trust in probate court in South Carolina. (ECF No. 86.) Petitioner indicates that "[a]ll of the law previously cited by Petitioner's counsel is likewise applicable for Mr. DeBruin's request for attorney's fees and costs," but does not otherwise substantively discuss the reasonableness or need for the special needs trust. (*Id*. at 1.) Nothing in Mr. DeBruin's accompanying billing records specifically distinguishes time that may have been spent on guardianship issues from time spent in pursuit of the special needs trust, though some specific tasks reference the trust and others do not.

In response, respondent requested that this supplemental request be denied with respect to reimbursement of fees and costs related to the special needs trust. (ECF No. 87.) Respondent explained that requests for costs associated with the creation of a special needs trust have been repeatedly denied by special masters as not being sufficiently related to proceedings on the petition. (*Id*. at 2-3 (citing *Torres v. Sec'y of Health and Human Servs*., No. 09-867V, 2013 WL 2256136 (Fed. Cl. Spec. Mstr. April 30, 2013); *Alvardo v. Sec'y of Health and Human Servs*., No. 15-02V, 2017 WL 4053419 (Fed. Cl. Spec. Mstr. Aug. 7, 2017); *J.R. by Revaitis v. Sec'y of Health & Human Servs*., No. 16-813V, 2018 WL 5629723 (Fed. Cl. Spec. Mstr. Sept. 28, 2018).)

---

[13] The "estimated" expenses tend to be travel expenses. Given that this travel did occur, I have no doubt that travel costs were incurred; however, the lack of proper documentation frustrates any effort to assess the reasonableness of the amounts or the accuracy of the estimations. For example, Mr. Soong estimates that he spent $400 for a two night stay at a hotel during his February 2014 trip to Oklahoma (ECF No. 77-2, p. 1.) However, there is no information in his application regarding the hotel at issue that would allow any opportunity to even attempt to confirm relevant room rates. Moreover, Mr. Soong's billing records show that he spent only one night in Oklahoma during that trip rather than the two nights referenced in his estimate. (ECF No. 77-1, p. 1.) Similarly, Mr. Soong's 6/11/2019 charge for a hotel during the mediation in South Carolina is based on a five-night occupancy whereas nothing in his motion or records substantiates why he flew to South Carolina three days prior to what was a single day mediation and, again, the hotel is not identified.

Respondent stressed that nothing in the settlement agreement reached by the parties required petitioner to establish a special needs trust. Respondent noted that Mr. DeBruin's timekeeping appeared to intermingle potentially compensable guardianship work with the unreimbursable time spent pursuing the special needs trust. (*Id*. at 3.)

In reply, petitioner filed a supplemental or revised declaration by Mr. DeBruin. (ECF No. 88.) Seemingly in response to respondent's position, Mr. DeBruin's revised declaration reduces the hours he billed from 32.75 hours to 25.5 hours. (*Compare* ECF No. 86, p. 4 and ECF No. 88, p. 4.) Based on my comparison of the billing records I am satisfied that Mr. DeBruin has excised the hours spent pursuing the special needs trust from his overall billing. The remainder of the billing appears reasonable and appropriate. However, as respondent observes, documentation has not been provided to substantiate the court costs incurred or whether they relate to the guardianship or the trust.

Accordingly, **petitioner is reimbursed for her attorneys' fees and costs related to her probate proceedings in the reduced amount of $7,650.00**.

### III.  Conclusion

In light of the above, petitioner's application for attorneys' fees and costs is **GRANTED** with reductions and:

> **Petitioner is awarded a lump sum in the amount of $333,218.74, representing reimbursement for attorneys' fees and costs, in the form of a check made payable to petitioner and her counsel, Danny Chia-Chi Soong, Esq.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[14]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[14] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).